IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DERRICK BROWN,
Plaintiff,

v.

Case No. 20–CV–00325–JPG

EATON CORPORATION and
CHRISTOPHER J. HOLCMANN,
Defendants.

# MEMORANDUM & ORDER

This is a racial-discrimination case. Before the Court are Defendants Eaton Corporation and Christopher J. Holcmann's Motion to Dismiss, (ECF No. 8); and Plaintiff Derrick Brown's Motion to Remand, (ECF No. 10), and Motion to Stay, (ECF No. 14). For the reasons below, the Court:

- **DENIES** the Motion to Dismiss;

- **GRANTS** the Motion to Remand;

- **FINDS AS MOOT** the Motion to Stay; and

- **REMANDS** this case to the Third Judicial Circuit Court in Madison County, Illinois.

## I.   PROCEDURAL & FACTUAL HISTORY

At the motion-to-dismiss stage, the Court must accept the factual allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

### A.  The Parties.

####    i.   *Eaton Corporation*

Eaton Corporation ("Eaton") is an Ohio corporation whose principal place of business is Ohio. (Notice of Removal 1, ECF No. 1). It has facilities in Highland, Illinois and Troy, Illinois, both in this District. (Corporate Disclosure Statement 1, ECF No. 9; Compl. 1, ECF No. 1-1).

####    ii.  *Brown*

Brown is an African American domiciled in Illinois. (Compl. at 1). He began working at Eaton's Highland facility in July 2016. (*Id.*). Throughout that October, a coworker berated Brown with curse words and criticized Brown's work. (*Id.*). Eaton's Harassment-Free Workplace Policy instructs employees facing harassment to report to human resources, who would then take "action designed to stop the harassment," such as transferring the employee to another location. (Compl. 1). So after Brown reported to human resources, Eaton transferred him to its Troy facility in January 2017. (*Id.* at 2).

####    iii. *Holcmann*

Holcmann is an Illinois domiciliary and the lead worker at Eaton's Troy facility. (*Id.* at 3).

### B.  The Allegations.

Upon arriving at the Troy facility, Brown was assigned to work under Holcmann. (*Id.*). Holcmann, in turn, was tasked with training him. (*Id.*).

From Brown's arrival in January 2017 to about August 2018, "Holcmann routinely referred to [Brown] as a 'nig*er.' " (*Id.*).

"In October 2017, Holcmann told [Brown], 'it is my job to get rid of all the blacks in the Troy facility.' " (*Id.*)

"In March 2018, Holcmann asked [Brown]: 'who sold black people to white people?' making a reference to slavery." (*Id.*)

And "[i]n August 2018, Holcmann requested that [Brown] provide music for Holcmann's function and when [Brown] inquired regarding the type of event Holcmann was planning, Holcmann told [Brown] he was having a 'lynching.' " (*Id.*).

Throughout this period, Holcmann also "refused to provide [Brown] with the training . . . required to advance in the Eaton Corporation." (*Id.*). For example, even after Brown complained to his union representative about how Holcmann denied him the opportunity to learn how "to use the robot to perform welding" (a skill Holcmann taught white employees of lower seniority than Brown), "Holcmann agreed to pay [him] 'weld technician pay' but refused to provide the training." (*Id.*).

Brown eventually "reported a complaint of racism and hostile work environment on or about August 22, 2018." (*Id.* at 4). Rather than disciplining Holcmann, Eaton "solicited comments from coworkers containing adverse employment information regarding [*Brown's*] behavior so that an investigation may be opened against [*him*]." (*Id.*) (emphasis added). Eaton then suspended Brown and placed him "on a last chance agreement based on conduct that occurred months prior which was not deemed, at the time, to be sufficient enough to violate [Eaton's] rules." (*Id.*). Eaton never investigated Holcmann's conduct or disciplined him. (*Id.*).

In January 2020, Brown sued Eaton and Holcmann in the Third Judicial Circuit Court in Madison County, Illinois. (*Id.* at 1). Counts I and II of Brown's Complaint allege that Eaton violated the Illinois Human Rights Act ("IHRA") by discriminating against him for being African

American and maintaining a hostile work environment, respectively. (*Id.* at 1, 6). Count III also alleges that Eaton violated the IHRA by retaliating against him for complaining about pervasive racial discrimination within the company. (*Id.* at 12). And Count IV alleges that Holcmann committed the tort of intentional infliction of emotional distress (or "IIED") when he "abused his power . . . by exposing [Brown] to extreme and outrageous conduct more severe than the job stress of a typical work environment." (*Id.* at 17, 19).

Although the Complaint does not allege a federal question and there is not complete diversity, Eaton and Holcmann removed the case to federal court anyway. (Notice of Removal at 1). In short, they suggest that Brown's claim against Holcmann was *fraudulently joined* to the Complaint because (1) Brown failed to state a claim for IIED and (2) Brown's IIED claim is preempted by the IHRA. (*Id.* at 2, 3, 5). They moved for dismissal, (Defs.' Joint Mot. to Dismiss 1, ECF No. 8); and Brown moved for remand, (Brown's Mot. to Remand 1, ECF No. 10). Brown also moved to stay discovery pending resolution of these matters. (Brown's Mot. to Stay 1, ECF No. 14).

## II.   LEGAL STANDARD

Federal courts have original jurisdiction over all civil actions that (1) arise under federal law (*federal-question jurisdiction*) or (2) involve citizens of different states with an amount in controversy exceeding $75,000 (*diversity jurisdiction*). *See* 28 U.S.C. §§ 1331–32.

"There are two ways for a . . . suit to wind up in federal court. A plaintiff may bring an action to federal court directly, or a defendant may remove a case to federal court from state court . . . ." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71 (7th Cir. 1992). In either case, the federal court must still have either federal-question jurisdiction or diversity jurisdiction. *See* 28 U.S.C. § 1441.

"Under some circumstances," however, "a state court dispute than cannot be removed to federal court in its original incarnation may become removable later." *Poulos*, 959 F.2d at 71. For example, if an out-of-state defendant can show that the plaintiff *fraudulently joined* an in-state defendant to the lawsuit, then the federal court can dismiss the in-state defendant and permit removal based on diversity jurisdiction. *See id.* at 73.

> [I]n most cases, fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives. . . . An out-of-state defendant who wants to remove must bear a heavy burden to establish fraudulent joinder. The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant. At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?

*Id.* (emphasis in original). "The 'fraudulent joinder' doctrine, therefore, permits a district court considering removal 'to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.' " *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999)).

### III.  LAW & ANALYSIS

Eaton and Holcmann failed to meet their heavy burden of proving fraudulent joinder. Brown stated a claim against Holcmann for IIED; and the IIED claim is not preempted by the IHRA. Remand is therefore appropriate.

#### A.  Holcmann's Conduct Exceeded All Permissible Bounds of Civilized Society.

"Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if she established that: '(1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high

— 5 —

probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress.'" *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604–605 (7th Cir. 2006) (quoting *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997)).

"Illinois courts have been hesitant to find intentional infliction of emotional distress in the workplace because, 'if everyday job stresses resulting from discipline, personality conflicts or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action.'" *Id.* at 605 (quoting *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 867 (Ill. App. Ct. 2000)).

That said, "Illinois courts have found extreme and outrageous behavior to exist in the employer/employee context when the employer 'clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment.'" *Id.* at 605 (quoting *Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001)).

Although "the requisite conduct for this claim—extreme and outrageous—describes a very small slice of human behavior," Restatement (Third) of Torts § 46 (2020), that is exactly what Holcmann's inflammatory rhetoric was. The Court agrees with Brown's contention that "[i]n today's evolved society no African American person should be called the N word as it is the most derogatory, demeaning, and belittling name that a white person can call a black person." (Brown's Mot. to Remand at 9). Holcmann's comments—as alleged and accepted as true—made frequent mention of the most shameful chapters of America's past, including racially motivated mob killing known as *lynching*. No person in the United States (or elsewhere) should have to withstand such intolerable and oppressive speech. Worse, this was not merely a personality conflict or an isolated incident: It was overtly bigoted and routine. Any reasonable observer would exclaim

"Outrageous!" merely witnessing such cruelty, let alone experiencing it regularly firsthand. This type of insufferable behavior has no place in civilized society, especially in one committed to dismantling the badges of slavery. *See* U.S. Const. amend. XIII; *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 444–47 (1968) (Douglass, J., concurring).

Put differently, there is, at the very least, a reasonable possibility that a state court would rule against Holcmann. His conduct, if true, was extreme and outrageous. Moreover, considering the frequency in which the verbal assaults occurred, Holcmann knew it was highly probable that severe emotional distress would result. And because Brown alleges that severe emotional distress occurred and manifested in physical symptoms, he states a claim for IIED.

### B. Brown's IIED Claim Is Not Preempted By the IHRA.

The IHRA prohibits employment discrimination based on a person's race. 775 Ill. Comp. Stat. §§ 5/2-101(E-1), 5/2-102(A). It also provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in [the] Act." *Id.* § 5/8-111(c). In other words, it "preempts tort claims that are 'inextricably linked' to allegations of . . . harassment and requires that such claims be brought only before the Illinois Human Rights Commission." *Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 905 (7th Cir. 2002) (quoting *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 22–23 (Ill. 1997)).

That said, ' "discrimination and intentional infliction of emotional distress are different wrongs,' and so torts that do not depend on a civil rights violation are not preempted." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006) (quoting *Sanglap v. LaSalle Bank FSB*, 345 F.3d 515, 519 (7th Cir. 2003)). "The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached; 'that is, if the conduct would be actionable even aside from its character as a civil rights violation because the

IHRA did not furnish the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it.'" *Id.* (quoting *Krocka v. City of Chi.*, 203 F.3d 507, 516–17 (7th Cir. 2000)) (internal citation and quotation marks omitted). "[T]he proper inquiry" is thus "not whether the facts that support [the plaintiff's] intentional infliction of emotional distress claim could also have supported a discrimination claim, but instead *whether [the plaintiff] can prove the elements of intentional infliction of emotional distress independent of legal duties furnished by the IHRA*." *Id.* (emphasis added).

As discussed, Holcmann's conduct states a claim for IIED regardless of the legal duties furnished by the IHRA. To be sure, Holcmann's status as Brown's supervisor and Eaton's agent made his conduct all the more *extreme and outrageous*. But even aside from the legal duties furnished by the IHRA, Holcmann's conduct remains actionable in tort: It was *extreme and outrageous* irrespective of the employment relationship. Brown's IIED claim is therefore not *inextricably linked* to his employment-discrimination claim and is not preempted by the IHRA.

## IV. CONCLUSION

The Court:

- **DENIES** Eaton and Holcmann's Motion to Dismiss;

- **GRANTS** Brown's Motion to Remand;

- **FINDS AS MOOT** Brown's Motion to Stay; and

- **REMANDS** this case to the Third Judicial Circuit Court in Madison County, Illinois.

**IT IS SO ORDERED.**

**Dated: Tuesday, September 22, 2020**

                                                **S/J. Phil Gilbert**
                                                **J. PHIL GILBERT**
                                                **UNITED STATES DISTRICT JUDGE**